UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

RICHARD PATTON, JR.,

    Plaintiff,

V.

K. HALL, et al.,

    Defendants.

Civil Action No. 7: 17-142-KKC

**MEMORANDUM OPINION
AND ORDER**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Federal inmate Richard Patton, Jr., has filed a *pro se* civil rights complaint against federal officials pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 1] The Court conducts a preliminary review of Patton's complaint because he has been granted permission to pay the filing fee in installments and because he asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A. When testing the sufficiency of the plaintiff's complaint, the Court affords it a forgiving construction, accepting as true all non-conclusory factual allegations and liberally construing its legal claims in the plaintiff's favor. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012). A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).

In his complaint, Patton states that while incarcerated at the federal penitentiary in Inez, Kentucky, on September 13, 2016 he and his cellmate were charged with assaulting an unidentified victim. The Incident Report charged Patton with Assaulting Without Serious Injury, a Code 224 offense. A hearing was held on September 22, 2016, at which time Disciplinary Hearing Officer

("DHO") J. Lott directed the reporting employee to re-write the Incident Report to identify the victim and to include a separate charge for Possessing a Dangerous Weapon, a Code 104 offense.

Patton alleges that the new Incident Report was not issued until sixteen days later, and that the warden did not approve additional time beyond the five days permitted by Bureau of Prisons Program Statement § 541.7(c). Patton further alleges that while Counselor K. Hall indicated in the relevant paperwork that she had conducted a new Unit Disciplinary Committee ("UDC") hearing regarding the matter on September 30, 2016 – a necessary step before referring the charges back to the DHO for decision – that statement was false. [R. 1 at 2-3] Patton indicates that the DHO held a hearing on the revised Incident Report on October 11, 2016. The DHO found him guilty of the assault and possessing a dangerous weapon, and imposed sanctions including the loss of 68 days of good conduct time and six months of phone and commissary privileges. Patton was released back to the general population that day. [R. 1 at 3-4; R. 1-1 at 1-2]

Patton filed a grievance on November 1, 2016, alleging that counselor Hall had not, in fact, held a new UDC hearing after the Incident Report was amended. While that grievance was pending, on December 9, 2016 Patton was placed in disciplinary segregation for allegedly exposing himself to a female BOP employee. [R. 1 at 3]

In late December 2016, the warden issued his response concluding that a second UDC hearing had not been held regarding the September assault charges, and therefore remanded the Incident Report to the UDC for a new hearing on those charges. [R. 1-3 at 9-10] Patton appealed to the BOP's regional and central offices, requesting compensation for any time he spent in segregation and a transfer to a medium security facility. [R. 1-3 at 1, 3, 5] At both the regional and national level, the BOP again noted that the Incident Report had already been remanded for

reprocessing, and denied his requests for further relief in March 2017 and June 2017 respectively. [R. 1-3 at 2, 6-8]

Patton separately alleges that at some point in 2017, Case Manager B. Ousley recommended that Patton be transferred to the Special Management Unit ("SMU"). A SMU is a section of a high-security prison with particularly restrictive conditions of confinement where inmates with a history of gang-related violence or moderate to severe disciplinary infractions are placed to undergo a course of rehabilitative programming over the course of 12 months. BOP Program Statement 5217.02 §§ 1, 2 (Aug. 2016). It appears that in August 2017 Patton was transferred to the SMU at the federal penitentiary in Lewisburg, Pennsylvania. Patton contends that Ousley should not have referred him to the SMU after the Incident Report for the assault and weapons charges had been remanded for reprocessing. [R. 1-1 at 2]

In his complaint, Patton nonspecifically contends that these events violated his due process rights under the Fifth Amendment and constituted cruel and unusual punishment under the Eighth Amendment. [R. 1 at 3-4; R. 1-1 at 1] Patton names as defendants in his complaint Counselor K. Hall; Disciplinary Hearing Officer J. Lott; Warden Gregory Kizziah; Regional Director J.F. Caraway; Administrator of National Inmate Appeals Ian Connors; and Case Manager B. Ousley. Patton seeks compensation "for every day I've spent in disciplinary segregation from 12-9-16 till 8-29-17." [R. 1 at 8]

Reviewing Patton's complaint is difficult because his allegations are disjointed and the nature of his claims is unclear. For instance, Patton claims that each of the defendants who responded to his inmate grievances or appeals had an obligation to make sure that the Incident Report was remanded and a new hearing held. [R. 1-1 at 2-3] Legally, Patton provides no statutory or constitutional basis for this asserted duty; factually, he never alleges that the Incident Report

3

was not, in fact, remanded for reprocessing. Regardless, Patton's claims against defendants Kizziah, Caraway, and Connors must be dismissed because their actions in simply responding to his inmate grievances and appeals do not indicate their personal involvement in the conduct complained of, and hence fail to state a claim for relief against them. *Alder v. Corr. Medical Services*, 73 F. App'x. 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."); *Martin v. Harvey*, 14 F. App'x 307, 309-10 (6th Cir. 2001). See also *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (holding that an "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.").

Patton's claims against Counselor Hall and DHO Lott likewise necessarily fail. While Patton complains that the pair were involved in a procedural error in the processing of the disciplinary charges against him, he cannot and does not point to any injury proximately caused by the failure of the UDC to hold a second hearing before the DHO's October 2016 re-hearing.[1] Shortly after Patton filed his inmate grievance, in late December 2016 the warden had remanded the Incident Report for reprocessing [R. 1-3 at 9-10], thus vitiating any sanctions imposed by the DHO in his October report. Importantly, Patton seeks damages only for the time he spent in disciplinary segregation starting on December 9, 2016. [R. 1 at 8] But Patton had been released from segregation for the assault and weapon charges and put back into the general population the

---

[1] That error was purely technical: because Patton faced the potential disallowance or forfeiture of good conduct time for both the assault and possession of a dangerous weapon charges – a sanction that only a DHO, not the UDC, may impose – *automatic* referral to the DHO was required. BOP Program Statement §§ 541.3(b), 541.7(a)(4), (g).

same day the DHO issued his report, on October 11, 2016. [R. 1-1 at 1] He remained in the general population until December 9, 2016, when he was returned to disciplinary segregation for allegedly exposing himself to a female staff member. *Id.* Patton's own allegations establish that the time period about which he complains (and for which he seeks damages) began on December 9, 2016, a date unrelated to the assault or weapons charges at all, but rather relate to the charge that he had exposed himself to a staff member. There is no indication in the record that any time he spent in disciplinary segregation during this period was related to or caused by the original assault and weapons charges.

Finally, Patton claims that officer Ousley acted improperly by referring him to the SMU after the Incident Report had been remanded for reprocessing. As a preliminary matter, Patton makes no effort to explain how this conduct, even if true, violated his constitutional rights. Placement in the SMU, without more, does not impose "atypical and significant hardships" upon a prisoner simply due to the more austere conditions of confinement in that unit. *Mackey v. Smith*, 249 F. App'x 953, 954 n.4 (3d Cir. 2007) (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.")); *Milhouse v. Bledsoe*, No. 1: 09-CV-01953, 2011 WL 332417, at *5 (M.D. Pa. 2011) (collecting cases). Nor does the fact that the assault and weapons charges against him remained undecided at the time of the SMU referral, assuming this to be so, make referral to the SMU improper or premature. Disciplinary convictions are one of several possible bases for referral to the SMU, but disruptive, repetitive, or gang-related conduct that does not result in a formal disciplinary conviction may be sufficient as well. See BOP Program Statement 5217.02 § 2 (Aug. 2016). The fact that the disciplinary charges against may have

5

remained inchoate at the time he was referred to the SMU does not undermine the propriety of the referral. For each of these reasons, Patton's complaint must be dismissed.

Accordingly, it is **ORDERED** as follows:

1. Patton's complaint [R. 1] is **DISMISSED WITH PREJUDICE**.

2. The Court will enter a judgment contemporaneously with this order.

3. Patton's Motion for Mandamus [R. 10] and Motion for Fast and Speedy Trial [R. 16] are **DENIED AS MOOT**.

4. This matter is **STRICKEN** from the docket.

Dated February 20, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY